UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 19-10395-LTS |
| | ) | |
| CARLOS ACOSTA ESTRELLA, | ) | |
| Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

On September 6, 2022, CARLOS ACOSTA ESTRELLA pleaded guilty to the above-captioned superseding indictment charging him with possession with intent to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii) (Count One), possession with intent to distribute 100 grams or more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(i) (Count Two), and possession of a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Three). In the final version of the revised Pre-Sentence Report (PSR), dated June 20, 2023, the United States Probation Office concluded that ESTRELLA faced a guideline sentencing range (GSR) of 130-147 months in prison and a mandatory minimum sentence of 120 months. PSR, ¶¶ 60, 62.

For reasons originally set out in the government's trial brief (Docket No. 175) and summarized again here, the government requests that ESTRELLA be sentence to 144 months in prison, a sentence within his correctly calculated guideline range. Through evidence gathered in three separate investigations, agents identified ESTRELLA as a high-ranking representative of the Sinaloa Cartel operating in Boston. Agents recovered large sums of cocaine, fentanyl, and firearms from ESTRELLA's residence or locations frequented by ESTRELLA, and ESTRELLA enlisted

family members and insisted on committing these extraordinarily serious crimes in the presence of his small children. He has earned the sentence recommended by the government.

<u>THE OFFENSE</u>

<u>The Two-Kilo Deal</u>. On September 9, 2019, Houston-based agents with the Drug Enforcement Administration ("DEA") shared information with their counterparts in Boston. A Houston confidential source had been contacted by a Mexican drug supplier who advised he had four kilograms of cocaine in Boston to sell for $29,500 per kilogram. The Mexican supplier provided the Houston confidential source with a telephone number for the Boston cocaine source and that number was passed through Houston to agents in Boston.

On September 11, 2019, at approximately 11:00 a.m., DEA Boston directed a cooperating witness (CW-1) to place a recorded call to the telephone number, spoke to the Boston cocaine source, and ordered the four kilograms of cocaine. The cocaine source directed CW-1 to meet him at the D'Parma Restaurant at 182 Sumner Street in East Boston. At the restaurant, CW-1 was met by ESTRELLA (agents later confirmed that his was the male voice who spoke with CW-1 on the phone) and his mother, Ana Acosta Grajeda. ESTRELLA and Grajeda had with them a dark blue drawstring-type backpack embossed with an American flag. ESTRELLA, Grajeda, and CW-1 walked over to CW-1's car.

During the recorded meeting, ESTRELLA changed the terms of the deal from four kilograms of cocaine to two kilograms. CW-1 complained to ESTRELLA that this was not the deal CW-1 had agreed to but ESTRELLA maintained that he only had the two kilograms of cocaine to sell. CW-1 told ESTRELLA he needed to speak to his partners. CW-1 got out of the car and contacted agents, who told CW-1 to proceed with the two-kilogram deal. Thereafter, CW-1 got back into the car and agreed to purchase the two kilograms of cocaine. GRAJEDA reached into

the blue backpack, pulled out two kilograms of cocaine, and handed the kilograms to CW-1. CW-1 handed the defendants approximately $60,000 of the sham money. The defendants then left CW-1's vehicle.

 <u>The Arrest and Search</u>. In addition to the video recording device, CW-1 was equipped with a transmitter to allow agents to listen in real time to the deal.  The reception from the transmitter was spotty and agents did not know that the deal was done until CW-1 left Sumner Street and called them. In that time, ESTRELLA and Grajeda had walked away from the location where the deal occurred. Once CW-1 confirmed that the deal was complete, agents and officers moved in to arrest ESTRELLA and Grajeda. Aerial surveillance showed agents and officers surging toward Sumner Street looking for ESTRELLA and Grajeda.

 A Boston Police officer, Richard Slamin, observed ESTRELLA on the second floor landing of 192 Sumner Street, an apartment building across from the D'Parma Restaurant and a short distance away from where the two-kilo deal occurred. When an officer asked ESTRELLA if he could speak with him, ESTRELLA ran and locked the door to the second floor apartment behind hm.  Several agents eventually breached the front door while others entered the apartment through a back entrance accessed by the fire escape. Agents arrested ESTRELLA and Grajeda (ESTRELLA's wife was present in the apartment with children but agents eventually allowed them to leave). Agents obtained a warrant to search the residence for additional narcotics, documents, U.S. currency, and cellular telephones.  Pursuant to the warrant, agents seized:

-  994 grams of heroin,

-  989.4 grams of cocaine,

-  the $60,000 in sham DEA currency,

-  the bag with the American Flag used by ESTRELLA and Grajeda to transport the two kilos of cocaine to the deal and the sham currency from the deal,

- a handwritten drug ledger,

- several cellular telephones, including the phone ESTRELLA used to set up the deal with CW-1,

- documents in ESTRELLA's name, including false identification documents, and

- a Kel Tec KS12 high-powered tactical shotgun with a laser sight and a box of shotgun shells.



PSR, ¶¶ 7-13.

ESTRELLA Targeted in Three Different Drug Trafficking Investigations. Prior to taking any action concerning the Houston tip, DEA Boston ran the telephone number they had been provided through various law enforcement databases (a process commonly referred to as deconfliction). That search revealed no information about the Houston phone number and no ties to other investigations. Agents then directed CW-1 to contact the Houston number to set the

cocaine deal described above in motion. Agents did not know who would show up to deliver the cocaine on September 11, 2019, and as was apparent from the aerial surveillance during and after the deal, agents did not where to find ESTRELLA or Grajeda after the deal concluded.

While the phone number for the "Boston cocaine source" had not come up before, two different law enforcement groups – a team of DEA agents based in New Bedford and agents with Homeland Security Investigations (HSI) – had identified ESTRELLA as a representative of the Sinaloa Cartel living at 192 Sumner Street in East Boston. Beginning in 2018, the DEA New Bedford group identified ESTRELLA's home as 192 Sumner Street in East Boston and observed ESTRELLA routinely visit a stash house at 17 Avila Street in Hyde Park used by a drug crew whose members had engaged in several hand-to-hand fentanyl sales with a cooperating witness and undercover police officer.

On October 5, 2018, agents observed ESTRELLA and his wife park a Ford Taurus registered to ESTRELLA's wife in a garage in the Seaport District using a parking pass. The pass was associated with a telephone number subscribed to ESTRELLA's wife at 192 Sumner Street, Apartment 2, in East Boston. On November 5, 2018, agents observed the Ford Taurus arrive at 17 Avila Street and observed ESTRELLA and Adan Gabriel Lara-Ciprian, a/k/a "Bolivar Torres," who had engaged in hand-to-hand fentanyl sales with the CW and UC, carry items from the trunk into the stash house. On December 8, 2018, agents observed ESTRELLA, again in the Ford Taurus, meet Lara-Ciprian at 17 Avila Street and watched as they went inside the stash house. On April 2, 2019, ESTRELLA, his wife, and their minor children used the Ford Taurus to visit 17 Avila Street stash house. ESTRELLA entered the stash house with Willie Alexis Perez Baez, a/k/a "Richie," a co-conspirator of Lara-Ciprian's. On August 6, 2019 – a little over a month before ESTRELLA's arrest – agents observed ESTRELLA walk up to 17 Avila Street. ESTRELLA eventually greeted

Lara-Ciprian at the front door to the stash house with a handshake and went inside. After an hour, ESTRELLA left the stash house, this time carrying a dark colored backpack with an American flag on it – just like the bag used to deliver the kilos and take the money on September 11, 2019.

On November 14, 2019 (two months after ESTRELLA's arrest), agents executed a search warrant at 17 Avila Street and seized hundreds of grams of fentanyl and cocaine, cutting agents, components for a kilo press, and several firearms. Thereafter, Lara-Ciprian, Perez Baez, and several other individuals were indicted for conspiracy to distribute 400 grams or more of fentanyl and other offenses. See United States v. Franklin Alcantara Lorenzo, a/k/a "Manuel Villalobos," et al., Cr. No. 19-10439-IT.

In addition to the DEA New Bedford case, agents with HSI were conducting a contemporaneous investigation into Mark Anthony Figueroa, a previously convicted federal drug trafficking defendant alleged to have laundered over $500,000 in cash intended to be sent to drug suppliers in Mexico. United States v. Mark Anthony Figueroa et al., Cr. No. 21-10333-RGS. In 2018-2019, agents determined that Figueroa was in contact with ESTRELLA and an indicted co-conspirator of Figueroa's. Agents also conducted surveillance that established that ESTRELLA lived at 192 Sumner Street and came and went from that address on a regular basis. See Docket Nos. 142 (Government's Notice of Intent to Offer 404(b) Evidence) and 175 (Trial Brief); see also PSR, ¶ 13a.

ARGUMENT

In his sentencing memorandum filed on June 26, 2023 (Docket No. 216), ESTRELLA makes obligatory reference to the seriousness of his offense. However, the bulk of the memorandum is spent asking the Court to downwardly depart to the mandatory minimum 120

month sentence in this case, "because each day he has been incarcerated has been one in which he has not been present to help his wife, children, and mother."

ESTRELLA enlisted his mother to help him sell two surplus kilograms of cocaine. After the deal, agents chased ESTRELLA into his East Boston apartment, where they found the $60,000 in funds from the drug deal on a table in the living room. Also present in the apartment – ESTRELLA's mother, who was arrested, and ESTRELLA's wife and children, who were allowed to leave before the search warrant was executed. Agents searched this tiny apartment and seized another kilogram of cocaine, a kilogram of heroin, and the rifle with laser sight pictured above.

A one time occurrence? Not at all. Six months before ESTRELLA's arrest, agents in a separate DEA investigation saw ESTRELLA, with his wife and children in tow, drive to a stash house at 17 Avila Street in Hyde Park. Agents watched as ESTRELLA and Adan Lara-Ciprian, a/k/a "Bolivar Torres" (later indicted in the Judge Talwani case noted above) went inside. Two months after ESTRELLA's arrest, agents searched the stash house and seized hundreds of grams of fentanyl and cocaine, cutting agents, components for a kilo press, and several firearms.

Cocaine, heroin, fentanyl, an assault rifle, other firearms, seized from a previously deported criminal connected to one of the most dangerous cartels in the world – these are  factors that warrant imposition of the serious, guidelines-based sentence sought by the government. Indeed, there is a reasonable argument that ESTRELLA's East Boston apartment was itself a stash house. See United States v. Melendez-Rosado, 57 F.4th 32, 40-41 (1st Cir. 2023) (in case of first impression, Court held that a premises that serves both as a family's place of residence and as the hub of a drug distribution enterprise can qualify for "stash house" enhancement under USSG § 2D1.1(b)(12)). The government points to Melendez-Rosado not in an effort to convince the Court to apply the enhancement here but to support the reasonableness of ESTRELLA's guideline

sentencing range as found by Probation. And ESTRELLA's enlistment of family members and insistence on committing these extraordinarily serious crimes in the presence of small children militates against a reduction out of the guideline range down to the mandatory minimum. See Melendez-Rosado, 57 F.4th at 42 (Court upwardly departed based in part on presence of small children in residence with drugs and firearm).

To achieve general and specific deterrence, promote respect for the law, and to protect the public, the government respectfully requests that this Court sentence CARLOS ACOSTA ESTRELLA to 144 months in prison. See 18 U.S.C. § 3553(a).

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     /s/ Christopher Pohl
        Christopher Pohl
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 28, 2023.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney